ACCEPTED
12-14-00298-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/18/2015 12:21:18 PM
CATHY LUSK
CLERK

# Court of Appeals
## State of Texas
## Twelfth Supreme Judicial District
## Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

2/18/2015 12:21:18 PM

CATHY S. LUSK
Clerk

12-14-00298-CR

Robert Eugene Pritchett
Appellant
VS.
The State of Texas
Appellee

On Appeal from the 273rd District Court
San Augustine County, Texas
Trial Cause No. CR-13-8411

## APPELLANT'S REPLY BRIEF

Respectfully Submitted,

DONOVAN PAUL DUDINSKY
Texas State Bar No. 24038869
701 South Liberty Street
San Augustine, Texas 75972
Tel.  (936) 275-9871
Fax. (936)-275-9655
E-Mail: dpauldudinsky@yahoo.com

ATTORNEY FOR APPELLANT

SUBMITTED FOR REVIEW
(Oral Argument Not Requested)

# I. IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's judgement or order appealed from, and the names and addresses of all trial and appellant counsel:

Parties:     Appellant      Defendant - Robert Eugene Pritchett

Trial Counsel:     For Defendant, Robert Eugene Pritchett
Donovan Paul Dudinsky
Rudy Valesquez

Appellate Counsel:     For Appellant: Donovan Paul Dudinsky
701 South Liberty Street
San Augustine, Texas 75972

Appellee Counsel:     For Appellee: J. Kevin Dutton, District Attorney
P. O. Box 714
San Augustine, Texas 75972

Trial Judge:     Honorable Judge Charles Mitchell
273rd Judicial District
San Augustine, Texas 75972

## II.  TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................2

TABLE OF CONTENTS..............................3

COVER PAGE TO APPELLANT'S REPLY BRIEF....4

APPELLANT'S POINT OF ERROR 1
APPELLEE'S REPLY 1
ARGUMENT TO APPELLEE'S REPLY 1..................5-9

APPELLANT'S POINT OF ERROR 2
APPELLEE'S REPLY 2
ARGUMENT TO APPELLEE'S REPLY 2..................9-16

APPELLANT'S POINT OF ERROR 3
APPELLEE'S REPLY 3
ARGUMENT TO APPELLEE'S REPLY 3..................16-19

APPELLANT'S POINT OF ERROR 4 & 5
APPELLEE'S REPLY 4 & 5
ARGUMENT TO APPELLEE'S REPLY 4 & 5............19-22

 PRAYER.....................................................23

CERTIFICATE OF SERVICE......................................23

CERTIFICATE OF COMPLIANCE..............................24

## Case No. 12-13-00298 CR

## IN THE
## COURT OF APPEALS
## TWELFTH SUPREME JUDICIAL DISTRICT
## TYLER, TEXAS

**************************************************************

## ROBERT EUGENE PRITCHETT
**Appellant**

## V.

## THE STATE OF TEXAS
**Appellee**

**************************************************************

## On Appeal From the 273rd Judicial District

***********************************

TO THE HONORABLE JUDGES OF SAID COURT:

**COMES NOW** Robert Eugene Pritchett, Appellant, in the above styled and numbered cause, by and through his attorney of record Donovan Paul Dudinsky and files this his Reply Brief pursuant to Rule 38.3 of the Texas Rules of Appellate Procedure, and in support would show the Court the following:

# APPELLANT'S POINT OF ERROR 1.

## The State has a constitutional duty under the due process clause or the Fourteenth Amendment to disclose any material evidence that is favorable to defense.

APPELLEE'S REPLY 1

THE STATE DID NOT FAIL TO DISCLOSE EVIDENCE FAVORABLE TO THE DEFENSE.

1.    "Appellant cites the laundry list of cases, which culminate in Brady, that place a burden on the state to produce all evidence to the defense. This particularly applies to evidence that is favorable to the defense. In this case Appellant sought to obtain documents directly from the police department under a subpoena for business records."

2.    "The items sought by the defense was a written policy on impoundment of vehicle and a video of the stop. The written policy on impoundment, if one exists, may be a matter that would be subject to a business record request, but the video which is actual evidence of a crime, would not. It should be noted that no request for discovery, general or specific, was served on the prosecutor."

3.    "Appellant took no action to enforce the subpoena. No motion to compel or motion for contempt was filed. The policy on impoundment was a moot issue

anyway as the drugs were found in "plain view" search, not an inventory search."

4.    "The failure to turn over the video was not a result of withholding evidence it was a result of a computer crash.  (RR Vol. 2, P. 73)."

## ARGUMENT TO APPELLEE'S REPLY 1

Appellant has been for six year to date employed with a practicing defense attorney whose office is located in the town of San Augustine, Texas.

Appellee begins his reply with stating that Appellant cited a "laundry" list of cases.  Appellee is learned in legal knowledge but perhaps critically lacking in accuracy.  However, within the Appellant's cited authorities may be found Article 2.01 of the Code of Criminal Procedure in reference to the incumbents duties of district attorneys, "[It] shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see justice is done.  They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused."

Appellee continues in regards to the San Augustine Police Department's guide lines or standardized policy on impound procedure, " if one exists, may be a matter that would be subject to a business record request, but the video which is actual evidence of a crime would not."

(Reply 1)

Appellee impliedly concedes that the police department's policy on impound procedure is a business record. Appellant requested pursuant to Tex R.Evid. 803(6) and Tex.R.Evid.902(10) the business records of the police department on impound procedure. Also requested on the Subpoena to the police department were complete employment history of the arresting officer Jonathon Sowell #106, including any citizen grievances filed against said officer concerning his harassment of citizens including past cases, dropped cases and on-going cases filed against said officer. The complete employment history of the other officer involved, James Blackwell #111, including reason for his employment termination and any citizen grievances filed against officer concerning his harassment of citizens including past cases, dropped cases, and on-going cases filed against said officer. The Appellee instructed the police department not to respond to Appellant's request. There was much more left out than just the rules of impoundment procedure. (RR. 3, P. 76, L. 20-25).

During the trial, Appellant's defense counsel cross examined the officer in charge of the police department's administrative affairs. The officer said the police department has a written policy on impoundment procedure. (Vol. 3, P. 75 and 76, L. 18-25, and L. 1.). The officer was further cross examined and told defense counsel that the officer was told by the district attorney not to release the information on the police

department's impoundment procedure and other information requested per defense's subpoena request. (Vol. 3, P. 75, 76, 77, L. 25, L. 1-25 and L. 1-8).

The State's counsel, Appellee, was in violation of Due Process and in violation of Article 2.01 of the Texas Code of Criminal Procedure when Appellee gave legal advice to the police department instructing them not to honor nor give Appellant's attorney any items requested in Appellant's attorney's subpoena for business records.

Appellee asserts "[The] policy on impoundment was a moot issue any way as the drugs were found in plain view search, not an inventory search. (Reply 1)

Appellee would patronize for the excuse of "moot" to sooth his personal decision to disregard ethical courtesy and deny Appellant's request for material evidence pursuant a lawful subpoena. Appellant disagrees with the Appellee that the police department's policy on impound is a moot issue because a drug less than 0.01 hundredths of a gram (not drugs) was discovered during an "Inventory Search." The evidence at trial shows in Defense Exhibit #7, numbered 6690 and entitled "EVIDENCE CARD" bears the signature of the arresting officer Sowell, and shows that a drug was recovered by an "INVENTORY SEARCH." The State's attorney, Appellee, never addressed nor disputed the "EVIDENCE CARD" at trial.

Appellant was arrested for failure to display driver's license, Appellant's vehicle

was then impounded, and Appellant's vehicle was then subjected to an inventory search.

During the trial, Appellant's defense counsel questioned whether the police department had an impound policy, that shifted the burden upon the State to prove that the police department impoundment policy exist and it was followed. The State, Appellee never addressed these issues nor showed or proved that the police department followed any specific impoundment procedure.

Appellants Point of error 1, should be granted.

## APPELLANT'S POINT OF ERROR 2.

**Appellant was denied due process of law when the State through its agents, San Augustine Police Department destroyed and or failed to preserve Material Exculpatory evidence of a video/audio recording of the Alleged Traffic Violation, Detention, Impoundment and Inventory search of the Appellant that form the basis of the conviction.**

### APPELLEE'S REPLY 2

THE APPELLANT WAS NOT DENIED DUE PROCESS OF LAW WHEN THE VIDEO OF THE STOP WAS LOST OR DESTROYED.

1.   "Appellant, to prove the State failed to preserve potentially useful evidence, he must establish that the evidence was (1) material, (2) favorable to the defense and (3) destroyed in bad faith by the State. *Salazar v. State, 185 S.E. 3d 90, 92 (Tex. App. - San Antonio 2005, no pet.).* Appellant must show bad faith on the part of the police, in order for failure to preserve to constitute a denial of due process.

*Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed 2d 281 (1988).*

Also, *McLaffey v. State, 937 S.W. 2d 51, 53 (Tex. App. - Houston [1ˢᵗ Dist.] 1996, no pet.).* A showing of negligence on the part of officers is not equivalent to bad faith. *Saldana v. State, 783 S.W. wd 22, 23 (Tex. App. - Austin 1990, no pet.)"*

2.    In this case there is no evidence of bad faith on the part of the police. The only evidence was of a computer crash. (RR. Vol. 2, P. 73).

## ARGUMENT TO APPELLEE'S REPLY 2

**(1). Material:**

Material, important; of consequence; such as a reasonable prudent person would take into account in making a decision. To say that something is "material" simply means that it matters.

The arresting Officer, Officer Sowell testified that a video (over a half mile) of the following Appellants car, the alleged traffic violation, the detention, impoundment and inventory search were all recorded on video/audio. A video is material evidence of the incident. The audio portion of the video is material evidence. The video/audio is just as material as DNA or a finger print is to any criminal case. In Officer Sowell's testimony on cross examination and re-cross, the video/audio would have answered 10 questions that the Officer Sowell did not answer.

Officer Blackwell's testimony on cross examination and re-cross, the video/audio would have answered 15 questions that the Officer Blackwell did not answer.

The evidence of the video/audio is material.

**(2). Favorable to the Defense:**

Officer Sowell's video/audio contains Exculpatory Evidence that is very favorable to the Defense. The discrepancies and conflicting testimony of the two officers. The video/audio would show what actually transpired that night. As Officer Blackwell testified to that the video documents everything. The video/audio would have impeached the testimony of the two police officers that testified for the State. The video/audio would have contained the answers to a combined, 25 question (during cross examination) the officer's did not answer and if they had been answered would have been favorable to the Defense.

The video would have shown the following:

1.    The video would show that the Appellant did not violate any moving violation of the traffic code.

2.    The video would show that the Appellant stopped correctly at the intersection of Hospital Street and North Milam Street, the intersection of the alleged traffic violation.

3.    The audio portion of the video, you could hear the arresting Officer asking

Appellant to search his vehicle. (RR. 2, P. 84)

4.    The audio portion of the video, you could hear the arresting Officer asking Appellant to open his mouth.

5.    The video would show an illegal search of Appellant mouth by the arresting Officer shining a flashlight in Appellants mouth, searching for a crime.

6.    The video/audio would have shown when Officer Blackwell arrived at the scene.

7.    The video would show the Appellant being handcuffed and the Appellants pockets being searched.

8.    The video would show when the owner of the vehicle showed up on the scene.

9.    The conflicting testimony of the two Officers about the inventory search, the video would had shown exactly how the inventory was conducted and showed the untruthful testimony of the two Officers on how exactly they performed the inventory search.

10.    The video would have shown Officer Sowell filling out an inventory list that was absent at trial.

11.    The audio portion would prove when the wrecker was actually called before the inventory search or after.

As Officer Blackwell testified to, that the video documents everything and the video/audio would impeach the testimony of the states witnesses. Therefore the video/audio contains exculpatory evidence and favorable evidence to the defense.

**(3). Destroyed in bad faith by the state:**

In the Appellee's reply, it states, In this case there is no evidence of bad faith on the part of the police. The only evidence was of a computer crash.

Bad Faith, when the rights of someone else are intentionally or maliciously infringed upon, such conduct demonstrates Bad Faith.

Officer Sowell logged Officer Blackwell's VHS video into evidence, but he never logged his own digital video into evidence. At trial, the State let Appellants attorney's view Officer Blackwell's video. Also, at trial, Officer Sowell never testified that he actually download the (his) video. There are no witness testimony that Officer Sowell actually downloaded the (his) video. Officer Blackwell testified that he did not know what he did with it (the video). (RR. 3, P. 54). During cross examination of Officer Sowell, testified that he had a video, but our computer hard drive crashed at the police department and lost the video (RR. Vol. 2, P. 73). During the States direct examination of officer Sowell, the State never questioned or proved that Officer Sowell actually downloaded his video to a computer. The State never proved that Officer Sowell

actually downloaded his video to the computer that allegedly crashed at the San Augustine Police Department. The State never proved when this alleged computer crashed.

In cross examination of Officer Blackwell, he was ask:

Q: So what we have here is a so-called crime scene, and it's not normal to take pictures?

A: Well there "generally" would be a video from the patrol car recording the entire scene, documenting everything real time. (RR. 3, P. 43, L. 9-13)

Officer Blackwell did not address the question that was asked. But he did reply to the video. The word "generally" (meaning usually; commonly; ordinarily:) would be a video. Along with Officer Blackwell's other statement, that he had no idea what he (Officer Sowell's video) did with it. Seems to imply that Officer Blackwell, knew there was no video.

Cross examination continues:

Q: And but we do know is that unfortunately that video was destroyed. Were you aware of that?

A: I was not. (RR. Vol. 3, P 43, L. 22-24)

Officer Brazeal, the custodian of records testified that digital video's were saved

digitally to a card. (RR. Vol. 3, P. 74) So, where is the video card of this incident? The State said in it's closing statement that, it just gets downloaded to the "mainframe" (RR. Vol. 3, P. 111). The mainframe, that would be the Police Departments computer system, network. Networks, have backup. So where is the video? Also in the States closing, it also stated that the States Attorney stated, I tried a case where the whole dadgum case file was lost by the Police Department. (RR. Vol. 3, P. 111)

There is reasonable doubt, did Officer Sowell actually downloaded his video of the incident. The arresting officer never testified that he did download his video of the incident. Officer Blackwell never testified that Officer Sowell down his video. Officer Blackwell did testify that he did not know what he (Officer Sowell) did with it. The Custodian of records, Officer Brazeal never testified that Officer Sowell downloaded the video. The Appellant argues that there is no evidence what so ever that the video, was ever downloaded at all. The Appellants attorneys stratige was not to address the download issue, and see if the States attorney addressed whether or not the video was ever downloaded. The State did not, in it's examination of Officer Sowell, addressed the download of his video. Proof is entirely lacking to positively justify officer Sowell's conduct. There was no evidence or proof brought forward in court showing officer Sowell intended to save

and preserve video/audio evidence for the court and jury to review. Officer's

Sowell's failure to download and save and preserve evidence is a violation of

Appellant's right to due process and is an act of "Bad Faith" showing a sordid

respect for the judicial system of justice.

Appellant's Point of Error 2 should be granted.

**APPELLANT'S POINT OF ERROR 3**.

**The trial court abused its discretion sustaining prosecution's objection to defense motion to read into the record the relevant section of the Transportation Code for the jury's understanding as it applies to motorists stopping at intersections.**

APPELLEE'S REPLY 3

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY SUSTAINING
THE STATE'S OBJECTION TO THE DEFENSE SEEKING TO READ A
SECTION OF THE TRANSPORTATION CODE TO THE JURY.

1. "Counsel for the Appellant sought to read a section of the Transportation code to

    the jury during the trial. The State objected and the Court sustained the objection.

    The reading of the law to a jury is a matter largely within the sound legal

    discretion of the trial court, and will not constitute cause for reversal except

    where the matter shows clear abuse and has brought about at least probable

    injury. *Buchanan v. State, 52 Tex. Crim 235, 106 S.W. 134 (Tex. Crim.* 1907)."

2. "The jury is the exclusive judge of the facts, but is bound to receive the law from

    the court and be governed thereby. (*Tex. C.C.P. §36.13).* Before the court reads

its charge, counsel for the defense can request instruction or law in writing or by dictating into the record. (*Tex. C.C.P. §36.15*)."

3.    "The Appellant wanted to read the law as it applies to stopping at an intersection controlled by a stop sign to the jury during the trial, no during argument. The Court in sustaining the State's objection said that he would give the jury the law in his charge."

4.    "Appellant made no request for an instruction concerning the law to be included in the Court's charge and made no objection to it not being included in the Court's charge."

## ARGUMENT TO APPELLEE'S REPLY 3

Appellant's defense counsel deemed justification imperative to fairly and honorably allow a jurys intelligent guidance for their understanding during the guilt/innocense phase of trial the section 544.10 (3) of the Texas Transportation code and apply its controlling law during cross examination as it may confirm or contradict the stopping officer's reason for conducting Appellant's roadside detention.

Appellant was assured by the court that the wording of the relevant wording of the Transportation Code would be place into the jury charge. To Appellant's knowledge no transcript of conversation at bar supports Appellant's contention nor Appellant's assertion.

Appellee asserts that Appellant "[made] no request for an instruction concerning the law to be included in the court's charge and made no objection to it not being included in the court's charge."

(Reply 3)

During Appellant's request for the reading the relevant section of the Transportation code into the record, Appellant approached the bench for side bar. Appellee objected to Appellant "[reading] what you believe the law is." (Vol. 2, P. 77, L. 14-16) And the Appellee then objected to Appellant being at side bar. The presiding judge sustained Appellee's objection to Appellant being at side bar.
(Vol. 2, P. 77, L. 23-25).

Appellee cites an authority "[Where] upon trial for murder the State's counsel in arguing the case to the jury read extracts from the Texas Criminal Reports, and the charge of the court was in line practically with the authorities so read, and there were no facts read to the jury from said reports. Held, that the reading of the law to the jury is within the sound legal discretion of the court, and does not constitute reversible error unless probable injury is shown. Quoting: *A. P. Buchanan v. The State, 106 S.W. 134 (Tex. Crim. 907).*

Appellee cites a 118 year-old case wherein the State's counsel was allowed to read the authority of the law but in this case Appellant's counsel was not allowed to read

the authority of the law. It is probable that if the jury had been allowed 118 years later the opportunity to hear counsel's argument incorporating the wording of the Texas Transportation Code's relevant section of controlling law there would be no reversible error. It is probable that if the jury had been allowed during guilt/innocence to hear counsel's argument incorporating the wording of the relevant section of controlling law applicable to the facts of the officer's reasons for stopping Appellant, would the jury have found that the officer's reasons "were in line practically with the authorities so read." *Buchanan, Id.*

The jury's decision and verdict was the trial outcome of testimony the jury heard at trial. It is true and known the trial outcome had not in it the jury's hearing and reading not what Appellant's counsel "believes" the governing law is but what Texas says the governing law is to be.

Appellant's point of error 3 should be granted.

**APPELLANT'S POINT OF ERROR 4 and 5.**

**Appellant's Constitutional Rights were violated under the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution when the reasonable alternatives that were available to impoundment were not implemented.**

**The inventory search of Appellant's vehicle was an illegal unconstitutional investigative search for evidence in violation of Article 1, Section 9 of the Texas Constitution.**

APPELLEE'S REPLY 4 & 5

THERE IS NO REVERSIBLE ERROR DUE TO THE IMPOUNDMENT OR INVENTORY SEARCH, AS THE DRUGS WERE FOUND IN PLAIN VIEW.

1. "This reply applies to both Issue 4 and Issue 5."

2. "Appellant claims his rights were violated by the impoundment of the vehicle when there was an alternative means of protecting the vehicle available. This would be true if the drugs were found because of the inventory search. That would make the evidence the fruit of an improper search and not admissible. That is not the case here, the drugs were found in plain view. (RR. Vol. 3, P.12)."

## ARGUMENT TO APPELLEE'S REPLY 4 & 5

Appellee, replies to Appellant's point of error four and five, to which, Appellee replied there was no relationship between inventory and drug recovery.

Appellant was placed under custodial arrest for not having his drivers' license at the time to show the arresting officer. (RR. Vol. 2, P. 85, L. 22-23).

Appellant's trial attorney cross examined and questioned the arresting officer as to whether the arresting officer had developed probable cause to search Appellant's vehicle. The arresting officer testified that he did not have probable

cause to search Appellant's vehicle and conducted an inventory search of Appellant's vehicle. (RR. Vol. 2, P. 88, 89, L. 18-25, 1-6).

Immediately following Appellant's arrest, the arresting officer impounded Appellant's vehicle without consideration whatsoever for alternatives available to impoundment. Appellant's trial attorney during cross examination of the arresting officer put questions to the arresting officer concerning multiple alternatives available, and arresting officer answered that he did not consider alternatives to impoundment but impounded the vehicle when he arrested Appellant. (RR. Vol. 2, P. 94, 99, 107, L. 3-25, 1-25, 1-20).

Appellant agrees with Appellee's statement, "this would be true if the drugs were found because of the inventory search. That would make the evidence the fruit of an improper search and not admissible."

Defense Exhibit # 7 numbered #6670 and entitled "EVIDENCE CARD" bears the signature of one of the two officers who conducted the inventory search and the exhibit prima facie shows that a drug was recovered by an (INVENTORY SEARCH.)

Appellant points out Appellee's omission of Appellee's in-court examination

of the arresting officer who testified that after placing Appellant in the arresting officer's patrol unit, the arresting officer immediately began conducting an inventory search of Appellant's vehicle. (RR. Vol. 2, P. 38, L. 4-9).

Appellant points out Appellee's in-court direct examination of the second officer who testified that he was helping the first officer perform the inventory search of Appellant's vehicle and while the second officer was helping perform the inventory, the second officer found drug evidence in the Appellant's vehicle. (RR. Vol. 3, P. 8, L. 8-11).

The testimony presented at trial proves the search of Appellant's vehicle was not conducted pursuant to having probable cause. Appellee's reply is contrary to the evidence and testimony elicited at trial.

Appellant's point of errors 4 and 5 should be granted.

## PRAYER FOR RELIEF

WHEREFORE ABOVE PREMISES CONSIDERED, Appellant prays that Honorable Court reverse the judgement of the trial court and render judgement in favor of Appellant, or in the alternative, Appellant respectfully request that the Honorable Twelfth Court of Appeals remand this case back to the 273rd District Court of San Augustine County, Texas for a new trial.

Respectfully submitted,

LAW OFFICE OF DONOVAN PAUL DUDINSKY
701 South Liberty Street
San Augustine, Texas 75972
Phone:      936-275-9871
Fax:         936-275-9655
E-Mail:      dpauldudinsky@yahoo.com

## XII.  CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Appellant's Brief was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure (Appealed) on this 19th day of February, 2015.

/s/donovan    paul    dudinsky
_____
Donovan Paul Dudinsky

# XIII.   CERTIFICATE OF COMPLIANCE

I certify that this document contains 4,217 words (counting all parts of the font.  I certify that this document was prepared with Word Perfect X6, and according to the programs word-count function, the sections covered by TRAP 9.4(i)(1) contains 4,217 words.

/s/ donovan paul dudinsky

_____
Donovan Paul Dudinsky